UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

| | |
|---|---|
| ANGELA WAYNE PITTS, | ] |
| | ] |
|     Plaintiff, | ] |
| | ] |
|     vs. | ]   4:11-CV-3229-LSC |
| | ] |
| CAROLYN COLVIN, | ] |
| Commissioner, | ] |
| Social Security Administration, | ] |
| | ] |
|     Defendant. | ] |

MEMORANDUM OF OPINION

I.    Introduction

Plaintiff, Angela Wayne Pitts, appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her applications for a period of disability, Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI"). Ms. Pitts timely pursued and exhausted her administrative remedies, and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

Ms. Pitts was thirty-seven years old at the time of the Administrative Law Judge's ("ALJ's") decision, and she has a high school education. (Tr. at 27, 160, 209.) Plaintiff's past work experiences include employment as a data base

administrator, billing clerk, assistant manager in retail, cashier, information clerk, and customer service representative. (Tr. at 74.) Ms. Pitts claims that she became disabled on August 15, 2006, from alcohol dependence, depression, anxiety disorder, seizure disorder, obesity, status post bariatric surgery and alcohol liver disease.  (Doc. 8 at 1, Tr. at 10, 158-66, 167-70.)

When evaluating the disability of individuals over the age of eighteen, the regulations prescribe a five-step sequential evaluation process.  *See* 20 C.F.R. §§ 416.920; *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001).  The first step requires a determination of whether the claimant is "doing substantial gainful activity."  20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).  If he or she is, the claimant is not disabled and the evaluation stops.  (*Id.*)  If he or she is not, the Commissioner next considers the effect of all of the physical and mental impairments combined.  20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  These impairments must be severe and must meet the durational requirements before a claimant will be found to be disabled.  (*Id.*)  The decision depends on the medical evidence in the record.  See *Hart v. Finch*, 440 F.2d 1340, 1341 (5th Cir. 1971).  If the claimant's impairments are not severe, the analysis stops.  20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  Otherwise, the analysis continues to step three, which is a

determination of whether the claimant's impairments meet or equal the severity of an impairment listed in 20 C.F.R. pt. 404, subpt. P, Appendix 1.   20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).  If the claimant's impairments fall within this category, he or she will be found disabled without further consideration.  (*Id.*)  If they do not, a determination of the claimant's residual functional capacity ("RFC") will be made and the analysis proceeds to the fourth step. 20 C.F.R. §§ 404.1520(e), 416.920(e).

The fourth step requires a determination of whether the claimant's impairments prevent him or her from returning to past relevant work.  20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  If the claimant can still do his or her past relevant work, the claimant is not disabled and the evaluation stops.  (*Id.*)  If the claimant cannot do past relevant work, then the analysis proceeds to the fifth step. (*Id.*)  Step five requires the court to consider the claimant's RFC, as well as the claimant's age, education, and past work experience in order to determine if he or she can do other work.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant can do  other work, the claimant is not disabled.  (*Id.*)

Applying the sequential evaluation process, the ALJ found that Ms. Pitts met "the insured status requirements of the Social Security Act through June 30, 2012."

3

(Tr. at 12.) He further determined that Ms. Pitts has engaged in substantial gainful activity since the alleged onset of her disability. (*Id.*) Specifically, the ALJ found that starting in December 2008, Plaintiff worked for three months in a medical business department full time, at the substantial gainful activity level, but that Ms. Pitts testified that she left the job due to anxiety. (*Id.*) The ALJ proceeded to the next step of the evaluation because "this evidence does not fully dispose of the claimant's application [for disability benefits]." (*Id.*) According to the ALJ, Plaintiff's "alcohol dependence, depression, anxiety disorder, seizure disorder, obesity, status post bariatric surgery, and alcohol liver disease" are considered "severe" based on the requirements set forth in the regulations. (Tr. at 13.) Further, he found that all of Ms. Pitts's impairments, including the substance abuse disorder, meet section 12.09 of 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d) and 416.920(d)). (*Id.*) However, the ALJ found that if Plaintiff stopped the substance abuse, she would not have an impairment or combination of impairments that meets or medically equals any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.*) Thus, the ALJ proceeded to the next step of the evaluation and determined that if Ms. Pitts stopped the substance abuse, she would have the residual functional capacity ("RFC") to perform:

4

less than a full range of light work as defined in 20 C.F.R. § 404.1567(b) and 416.967(b) in that the claimant would be able to lift and/or carry 20 pounds occasionally and 10 pounds frequently; stand and/or walk six hours; sit six hours; and frequently balance, stoop, kneel, crouch, crawl, and climb ramps and stairs. I[n] addition, the claimant can never climb ladders, ropes and scaffolds, and is limited to work that avoids all exposure to unprotected heights. The claimant cannot perform commercial driving and cannot work in close proximity to large bodies of water. The claimant is limited to work that involves no more than short, simple instructions and only simple work-related decisions with few work place changes. The claimant can perform work that requires no more than occasional and non-transactional interaction with the public, occasional and non-transactional interaction with co-workers and occasional interaction with supervisors. The claimant is able to maintain concentration and attention for 2-hour periods with customary breaks.

(Tr. at 16-17.)

Relying on a vocational expert ("VE"), the ALJ determined that if the plaintiff stopped the substance abuse, she would be unable to perform any of her past relevant work. (Tr. at 27.)  The ALJ noted that Plaintiff is a "younger individual," she has a high school education, and she is able to communicate in English, as those terms are defined by the regulations.  (*Id*.)  He determined that transferability of job skills is not material to the determination of disability.  (*Id*.)  The ALJ then determined that "[i]f the claimant stopped the substance abuse, considering claimant's age, education, work

experience, and residual functional capacity, there would be a significant number of jobs in the national economy that the claimant could perform," such as addressing clerk, carding machine operator, and garment sorter. (Tr. at 28.)  Accordingly, the ALJ found that because Plaintiff would not be disabled if she stopped the substance abuse, her substance abuse is a contributing factor material to the determination of disability, and thus, the plaintiff has "not been disabled within the meaning of the Social Security Act at any time from the alleged onset date through the date of this decision." (*Id.*)

II.   Standard of Review

The Court's role in reviewing claims brought under the Social Security Act is a narrow one.  The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and (2) whether the correct legal standards were applied. *See Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).  The Court approaches the factual findings of the Commissioner with deference, but applies close scrutiny to the legal conclusions. *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).  The Court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner. (*Id.*)  "The

substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)).  Indeed, even if this Court finds that the evidence preponderates against the Commissioner's decision, the Court must affirm if the decision is supported by substantial evidence. *Miles*, 84 F.3d at 1400.  No decision is automatic, however, for "despite this deferential standard [for review of claims] it is imperative that the Court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987).  Moreover, failure to apply the correct legal standards is grounds for reversal. *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

III.    Discussion

Plaintiff claims that the ALJ's decision should be reversed and remanded for three reasons.  First, she argues that the ALJ should not have relied on the testimony of the medical expert who testified at her hearing because portions of her testimony are rendered "inaudible" in the administrative transcript.  Second, she contends that

the ALJ erroneously failed to consider the alleged side effects from her medications. Third, she argues that because she did not become dependent on alcohol until after she was violently raped in 2005, her alcohol abuse should not be considered a contributing factor material to a finding of disability.

A.    Reliance on the Testimony of the Medical Expert

Dr. Sydney Garner, Ph.D., is a medical expert in the field of psychology who reviewed all of the evidence and testified at Plaintiff's administrative hearing. (Tr. at 24-25, 60-73.) Plaintiff argues that because the ALJ relied heavily on the testimony of Dr. Garner in reaching his decision that she is not disabled, and since Dr. Garner's testimony in many instances is rendered "inaudible" in the administrative transcript, her case should be reversed and remanded so that the Commissioner can provide a complete transcript of the expert's testimony, or in the alternative, so that a supplemental hearing can be held where an expert can testify.

The weight afforded a medical opinion regarding the nature and severity of a plaintiff's impairments depends, among other things, upon: the examining and treating relationship the medical source had with the plaintiff, the evidence the medical source presents to support the opinion, how consistent the opinion is with the record as a whole, and the specialty of the medical source. *See* 20 C.F.R.   §§

404.1527(d), 416.927(d).  Medical experts, such as Dr. Garner, are considered experts in the Social Security disability programs and in their respective medical fields.  *See* 20 C.F.R. §§ 404.1512(b)(6); 416.912(b)(6), 404.1527(f)(2)(i), (iii), 416.927(f)(2)(i), (iii); S.S.R. 96-6p, 61 Fed. Reg. 34.  Their opinions may be entitled to greater weight than the opinions of treating or examining sources if they are supported by the evidence in the record.  *See* 20 C.F.R. §§ 404.1512(b)(6), 416.912(b)(6), 404.1527(f)(2)(i), (iii), 416.927(f)(2)(i), (iii), SSR 96-6p.  Further, as a specialist in the area of psychology, which is the area that concerned Plaintiff's primary basis for her alleged disability, Dr. Garner's testimony may be given greater weight than the opinion of a non-specialist.  *See* 20 C.F.R. §§ 404.127(d)(5), 416.927(d)(5).

Although parts of Dr. Garner's testimony are rendered "inaudible" in the transcript of the hearing, the transcript as a whole provides an accurate picture of Dr. Garner's testimony.  Dr. Garner clearly testified that she had reviewed the documentary evidence noting that Plaintiff has a chronic history of depression and some anxiety that was exacerbated following a rape that she had mentioned and was noted in the file. (Tr. at 61-62.)  She testified that Plaintiff's diagnosis would certainly include alcohol dependence, seizure disorder, dysthymic disorder and anxiety disorder, not otherwise specified. (Tr. at 61.)  Dr. Garner testified that with Plaintiff's

substance abuse, her condition would meet Listing 12.09. (*Id*.) She further stated that with Plaintiff's substance abuse, Plaintiff had marked limitations in maintaining activities of daily living, marked to extreme limitations to maintain concentration, persistence and pace, and marked to extreme limitations to maintain social functioning. (Tr. at 62.) However, Dr. Garner testified that without Plaintiff's substance abuse, Plaintiff had "no impairments in maintaining activities of daily living, mild to moderate impairments maintaining concentration, persistence, and pace, moderate impairments maintaining social functioning, with possible one to two episodes of decomp[ensation]." (*Id*.) Dr. Garner stated that without the substance abuse, Plaintiff would have only moderate difficulties carrying out and remembering complex and detailed instructions, mild difficulties with simple tasks, and moderate difficulties with the public, coworkers, and supervisors. (Tr. at 62-63.)

Upon examination by Plaintiff's counsel, Dr. Garner further stated that the medical evidence was sufficient for her to make her opinion. (Tr. at 63.) Dr. Garner also cited medical records that supported her conclusion that without substance abuse Plaintiff would have moderate impairments dealing with coworkers and supervisors. (Tr. at 64.) Dr. Garner then testified that she did not believe that Plaintiff's substance abuse was a direct result of her trauma after being raped, as argued by Plaintiff on

appeal.  (Tr. at 66.)  Instead, Dr. Garner testified that she believed that the trauma exacerbated Plaintiff's underlying mental condition.  (Tr. at 66-67.)  Further, Dr. Garner stated that the medical evidence did not show a period of sobriety that indicated that Plaintiff's condition would meet Listing 12.04.  (Tr. at 67.)

In his decision, the ALJ summarized Dr. Garner's testimony and opinions, and stated that he accepted Dr. Garner's testimony because she thoroughly considered Plaintiff's medical records, and her opinions were supported by the medical evidence and consistent with the record as a whole.

The record supports the ALJ's finding that Dr. Garner's opinion is consistent with the opinions of other medical sources in the record.  Dr. Feldman, a treating psychiatrist, completed a medical source statement in September 2008 in which he indicated that Plaintiff had only mild limitations in her ability to perform mental work-related activities.  (Tr. at 391-93.)  Dr. Feldman also noted that he did not understand why Plaintiff sought disability benefits because she was working part-time.  (Tr. at 393.)  Dr. Rankart, a state agency psychologist, reviewed Plaintiff's medical records in May 2008, and determined that Plaintiff was able to comprehend and recall brief and uncomplicated directions, carry out short, simple instructions, maintain adequate attention and concentration for a two hour period across an eight hour day, and exhibit

appropriate social interaction if considered for casual and moderately limited contact with the public and coworkers.  (Tr. at 385.)  These opinions provide support to Dr. Garner's opinions because they also suggest that Plaintiff's condition, without her substance abuse, did not meet a listed impairment.

In sum, because Dr. Garner is a specialist in the field of psychology, she reviewed all of the medical records, and her testimony is consistent with the other evidence of record, the Court sees no error in the ALJ's reliance on Dr. Garner's opinion in ultimately finding Plaintiff not disabled.  Furthermore, Plaintiff must make a "clear showing of prejudice before it is found that the [plaintiff's] right to due process has been violated to such a degree that the case must be remanded to the [ALJ] for further development of the record." *Graham v. Apfel*, 129 F.2d 1420, 1422 (11th Cir. 1997).  Thus, Plaintiff must show that the lack of a record created an evidentiary gap, resulting in unfairness or clear prejudice. *See Edwards v. Sullivan*, 937 F.2d 580, 586 (11th Cir. 1991) (finding that plaintiff was not prejudiced by a lack of representation because record did not contain any discernible evidentiary gaps).  Here, the vast majority of Dr. Garner's testimony was transcribed within the administrative record, and the testimony is clear that Plaintiff's condition, without the substance abuse, did not meet a listed impairment and that without the substance abuse she

would only have moderate impairments.  Thus, the record contained sufficient evidence for the ALJ to make an informed decision.

B.      Consideration of the Side Effects from Plaintiff's Medications

At her hearing, Plaintiff testified that she takes multiple medications that make her drowsy, and as a result, she would often nap or lie down, and try to let the medication "wear off." (Tr. at 45, 51.)  When questioned by Plaintiff's counsel at the hearing, Dr. Garner also testified that the medications Plaintiff was taking would, from time to time, cause drowsiness.  (Tr. at 73.)  Plaintiff now argues that the ALJ erroneously failed to consider the alleged side effects from her medications, and that her case should be remanded for proper consideration of the vocational implication of medication side effects on her ability to work.

As an initial matter, and contrary to Plaintiff's assertion, the ALJ did specifically consider Plaintiff's testimony concerning the side effects from her medications when he was evaluating her credibility and assessing her RFC.  He found that she takes Dilantin, Clonodine, Buspar, and Celexa as prescribed, that she testified at her hearing that they make her drowsy and that she has to lie down to nap to let the medication wear off. (Tr. at 17-18.)  He also noted that in September 2005, Plaintiff reported to Dr. Riser, a neurologist, that she had no side effects from medication. (Tr. at 19.)  The

ALJ ultimately found that Plaintiff's testimony about her symptoms, including about medication side effects, was not entirely credible.  (Tr. at 25.)  To the extent Plaintiff challenges the ALJ's adverse credibility finding, she has failed to provide evidence to support her allegations of side effects from her medications, as discussed herein.

A plaintiff's subjective testimony of pain and other symptoms may support a finding of disability if it is supported by medical evidence that satisfies the Eleventh Circuit's "pain standard," and if it is not discredited by the ALJ. *See Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995) (citing *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991)).  To satisfy the pain standard, a claimant must show "evidence of an underlying medical condition, and either (1) objective medical evidence to confirm the severity of the alleged pain arising from that condition, or (2) that the objectively determined medical condition is of a severity that it can reasonably be expected to give rise to the alleged pain." *Id.* at 1560; *see also Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005); *Landry v. Heckler*, 782 F.2d 1551, 1553 (11th Cir. 1986).  If the ALJ discredits the claimant's subjective testimony of pain and other symptoms, he must articulate explicit and adequate reasons for doing so. *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002); *see also* Soc. Sec. Rul. 96-7p, 1996 WL 374186 (1996) ("[T]he adjudicator must carefully consider the individual's statements about

14

symptoms with the rest of the relevant evidence in the case record in reaching a conclusion about the credibility of the individual's statements."). "Although [the Eleventh Circuit] does not require an explicit finding as to credibility, . . . the implication must be obvious to the reviewing court." *Dyer*, 395 F.3d at 1210 (quoting *Foote*, 67 F.3d at 1562).

The record supports the ALJ's adverse credibility finding because while the record contains treatment notes from many doctors, there is no evidence indicating that Plaintiff had any side effects from any medication that could have affected her ability to work for any consecutive twelve month period. (Tr. at 308-09, 311-14, 394, 544, 550). In fact, Dr. Riser, Plaintiff's neurologist, noted on March 17, 2005, that Plaintiff was doing well on her medication, and that Plaintiff had no confusional episodes, no staring spells, no numbness or weakness, and no visual symptoms. (Tr. at 249.) Dr. Riser indicated that it would be okay for Plaintiff to drive in one month. (*Id.*) During a follow-up visit on September 15, 2005, Plaintiff reported to Dr. Riser that she had no side effects or adverse reactions from her medications, and Dr. Riser noted that Plaintiff was driving without issues. (*Id.* at 250.) Plaintiff also reported having no medication side effects on April 4, 2008, at a clinic operated by the University of Alabama at Birmingham Community Psychiatry Program. (Tr. at 321.)

The only evidence, other than her own complaints, that Plaintiff points to in support of medication side effects is Dr. Garner's testimony, when questioned by Plaintiff's counsel, that the medications Plaintiff was taking would cause drowsiness. (Tr. at 73.) However, it was Dr. Garner's expert opinion that without the substance abuse, Plaintiff would only have moderate difficulties carrying out and remembering complex and detailed instructions, mild difficulties with simple tasks, and moderate difficulties with the public, coworkers, and supervisors.   (Tr. at 62-63.)  She never opined that the drowsiness would interfere with Plaintiff's ability to work.

Plaintiff's activities also undermine her allegations and support the ALJ's credibility finding.  Although not dispositive, a plaintiff's activities may show that the symptoms are not as limiting as alleged.  20 C.F.R. § 416.929(c)(3) ("Factors relevant to your symptoms, such as pain, which we will consider include: (i) Your daily activities . . . .").  As noted by the ALJ, the evidence shows Plaintiff did household chores and laundry, shopped, prepared meals, took walks, talked to her parents, left her house a few times a week to go to the grocery store, and could perform a task or chore for two hours before she needed a break.  (Tr. at 25, 229-34.)  She also worked part-time after the alleged onset date of disability.  (Tr. at 25, 229-34.)  While this work did not rise to the level of "substantial gainful activity," it does diminish the credibility of

Ms. Pitts's allegations of disabling side effects from medications.

Plaintiff also appears to argue that the ALJ had to provide a more extensive discussion of her alleged side effects. Specifically, she takes issue with the fact that the ALJ did not mention medication side effects in the hypothetical he posed to the VE, and he did not include medication side effects in his RFC assessment. However, the ALJ was not required to discuss on an individual basis every allegation made by Plaintiff. *Dyer*, 395 F.3d at 1211. The ALJ implicitly discounted Plaintiff's allegations of side effects as part of his finding that her allegations were not entirely credible. Given the minimal evidence in the record that Plaintiff complained of side effects from her medications, discussed *supra*, the ALJ was not required to specifically explain why Plaintiff's allegations of side effects were not entirely credible. *See Cherry v. Heckler*, 760 F.2d 1186, 1191 n.7 (11th Cir. 1985) (ALJ's failure to inquire further about side effects did not deprive represented claimant opportunity to be heard when only indication in the record of side effects was her statement before the ALJ that medication made her drowsy). Nor was it necessary for the ALJ to ask the VE a hypothetical question regarding a condition or symptom that he had properly discredited. *See Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1161 (11th Cir. 2004) (declining to address issue because not raised before district court but stating, "[i]n any

17

event, the ALJ was not required to include findings in his hypothetical that the ALJ had properly rejected as unsupported); *Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1270 (11th Cir. 2007) (finding that ALJ did not err by failing to include claimant's "fatigue, insomnia, anxiety, and depression in the hypothetical questioning").

Plaintiff relies on *Cowart v. Schweiker*, in which the Eleventh Circuit held that the ALJ failed in his duty to develop the record fully because he did not make any findings regarding the effect of the plaintiff's prescribed medications upon her ability to work. 662 F.2d 731, 737 (11th Cir. 1981). The court noted that "[i]t is conceivable that the side effects of medication could render a claimant disabled or at least contribute to a disability." *Id. Cowart* is distinguishable from the present case for several reasons. First, the plaintiff was not represented by counsel, and the court thus held that the ALJ's "basic obligation to develop a full and fair record rises to a special duty when an unrepresented claimant unfamiliar with hearing procedures appears before him." *Id.* at 735. Here, Ms. Pitts was represented by counsel at the administrative level before the ALJ, so the special duty did not arise. (Tr. at 10.) Second, the ALJ in *Cowart* made no findings regarding side effects from medication, leading the court to state, "At the very least, the administrative law judge should have made a finding on appellant's claim regarding side effects, making it possible for a

18

reviewing tribunal to know that the claim was not entirely ignored." 662 F.2d at 737. That ALJ did just that here, making specific findings concerning alleged side effects in assessing Plaintiff's RFC.

Because Plaintiff failed to meet her burden of providing corroborating medical evidence to support her allegations of side effects from her medications, substantial evidence supports the ALJ's adverse credibility determination, and the ALJ was not required to provide a more extensive discussion of Plaintiff's alleged side effects.

C.   Determination that Plaintiff Would Not Be Disabled if She Stopped the Substance Abuse

The Social Security Act precludes the award of benefits when drug or alcohol abuse is found to be a contributing factor material to the finding of disability.  *See* 42 U.S.C. §§ 423(d)(2)(c), 1382c(a)(3)(J); 20 C.F.R. §§ 404.1535, 416, 935; *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001).  The plaintiff, and not the Commissioner, bears the burden of proving that she would still be disabled if she stopped using drugs and/or alcohol.  *See Doughty*, 245 F.3d at 1275-76, 1280-81.  In this case, the ALJ reviewed the evidence and the testimony of the psychological expert and concluded that absent alcohol dependence, the plaintiff would not be disabled within the meaning of the Social Security Act.  (Tr. at 16-28.)

Plaintiff does not deny that she has a history of substance abuse described as

19

alcohol dependence.  (Doc. 8 at 10.)  Indeed, the record reflects that she has a long history of alcohol abuse with multiple admissions at substance abuse treatment facilities and hospitals.  Instead, Plaintiff appears to be making the argument that because her alcohol dependence was a response to the trauma of being violently raped in 2005, it should not be a contributing factor material to the determination of whether she is disabled.  However, Plaintiff points to no support for her argument that the reason *why* an individual began abusing drugs or alcohol should have any effect on whether the substance abuse is a contributing factor material to a finding of disability.

In any event, Dr. Garner, the psychological expert, clearly testified that she did not believe that the drug and alcohol abuse present in this case was a direct result of Plaintiff's trauma in 2005.  (Tr. at 66.)  Dr. Garner also stated that she believed that Plaintiff's extensive alcohol dependence and abuse is greatly exacerbating her preexisting conditions of depression and anxiety.  (Tr. at 61.)  As discussed *supra*, the ALJ properly relied on Dr. Garner's testimony in finding Plaintiff not disabled.

IV.    Conclusion

Upon review of the administrative record, and considering all of Ms. Pitts's arguments, the Court finds the Commissioner's decision is supported by substantial evidence and in accord with the applicable law.  A separate order will be entered.

Done this <u>21st</u> day of <u>March 2013</u>.

_____
L. Scott Coogler
United States District Judge
[160704]